533 A.2d 473

**COMMONWEALTH of Pennsylvania**

v.

**John T. SWEENEY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 1, 1987.

Filed Nov. 13, 1987.

34

William P. Weichler, Erie, for appellant.

Douglas W. Ferguson, Assistant District Attorney, Meadville, for Com., appellee.

Before BROSKY, TAMILIA and KELLY, JJ.

BROSKY, Judge:

This is an appeal from an Order denying appellant permission to withdraw as appellate counsel for John T. Sweeney.[1]

The issue presented by appellant is whether the trial court abused its discretion in refusing appellant's motion to withdraw as appellate counsel after he assisted Sweeney in filing a Notice of Appeal, where Sweeney only retained appellant for the pretrial and trial stages and where Sweeney was indigent and could not afford appellant to represent him on appeal. We agree with appellant that the trial court abused its discretion in refusing to permit him to withdraw as appellate counsel under the circumstances. We therefore vacate the Order disallowing withdrawal of appellant from the case and remand for appointment of

---

1. We consider the Order appealed from to be a final determination which causes the instant matter to be properly before us. The Commonwealth has neither questioned the appealability of the Order in its Brief to this court nor has it filed a Motion to Quash. Moreover, a panel of this Court in *Commonwealth v. Scheps, infra,* in text, concluded, without deciding, that an appeal from a similar order, was properly before it. In fact, the dissent in that case noted that the Order was a final appealable one.

counsel to represent Sweeney at the appellate stage of the proceedings.

Appellant states that he and Sweeney contracted for the former's services in February 1984 to represent Sweeney in the underlying case as well as on other criminal charges in Federal Court in Ohio. The agreement between appellant and Sweeney was limited to representation, as far as the instant matter is concerned, to the pre-trial and trial stages. Appellant represented Sweeney at trial where the latter was convicted of armed robbery. Appellant then filed and argued post-trial motions on behalf of Sweeney which were denied. Appellant proceeded to counsel Sweeney at the sentencing hearing. At that time, Sweeney filed a *pro se* Notice of Appeal prepared by appellant from the judgment of sentence.[2]

On June 27, 1986, before disposition of pre-trial motions, the trial court entered an order (1) indicating that appellant agreed to represent Sweeney at the post-verdict stage, (2) refusing to grant appellant's request to withdraw if the decision on post-verdict motions was unfavorable to Sweeney and (3) ordering appellant to "continue to represent the Defendant [Sweeney] through the appellate stage of this case."

At the sentencing hearing on September 5, 1986, appellant asked the Court to reconsider its earlier Order of June 27, 1986. This request was refused, and appellant was once again denied leave to withdraw as counsel by order entered that same day.[3] This appeal followed.

**2.** We have no information concerning the status or disposition of this appeal.

**3.** The Order of September 5, 1986—the Order appealed from—makes reference to denial of a *Petition* to withdraw. The Order of June 27, 1986 refusing appellant's request to withdraw in the event of an unfavorable decision on post-verdict motions and Ordering him to continue representation at the appellate stage does not refer to a Petition but, rather speaks in terms of appellant's *indication* to the Court of his agreement to represent Sweeney through the post-verdict stage, only. Neither the record certified to us nor the docket entries disclose any Petition to Withdraw. However, the Clerk of the trial court has assured this Court, via telephone conversation, that after a

Appellant's complaint to this court focuses on the fact that the trial court refused him permission to withdraw from further representation of Sweeney at the appellate stage. Appellant explained to the trial court at sentencing that his agreement with Sweeney was limited to representation of the latter through the trial stage only [4] (N.T. 40). Appellant informed the trial court that Sweeney was indigent, that appellant had discussed the matter with Sweeney's family, who were likewise without funds, and that Sweeney has a basic and fundamental right to appeal and have counsel appointed for that purpose (N.T. 40–41). Appellant also reminded the trial court that earlier in its colloquy with Sweeney, the former advised Sweeney of his right to perfect an appeal and the right to have counsel appointed and that the trial court's forcing appellant into a non-court-appointed, compensation-free representation of Sweeney on appeal renders advising Sweeney of his right to appellate counsel in the event of indigency meaningless (N.T. 46).

The trial court agreed with appellant that Sweeney did, indeed, have the right to counsel on appeal. In fact, the

search of its records, no such written Petition existed. We can thus assume that appellant made his initial request to the trial court orally, especially since appellant, at the sentencing hearing, requested the trial court to reconsider its Order of June 27, 1986. Moreover, appellant sets forth his reasons for withdrawal at sentencing, which reasons form the basis for his argument on appeal.

4. Appellant, by indicating to the court at sentencing that his representation of Sweeney terminated at the trial stage, apparently considered the sentencing proceedings as part of that stage. Appellant there stated, "I was retained to represent Mr. Sweeney through the trial court level and the trial court level is now completed by the imposition of sentence today." (N.T. 40). This, apparently, was not appellant's position prior to the disposition of post-verdict motions as is evidenced from the language of the Order of June 27, 1986, where the trial court denied his request to withdraw if post-verdict motions were decided unfavorably to Sweeney. From the tenor of appellant's statement at sentencing, *supra*, we can only gather that the agreement between appellant and Sweeney included representation at sentencing. Nothing said by appellant at sentencing leads us to believe that appellant represented Sweeney at that proceeding *gratis* or that the former's representation and appearance there on behalf of his client was anything other than as per agreement and not otherwise pursuant to the directive of the Order of June 27, 1986.

trial court premised its reasons for not allowing appellant to withdraw upon Sweeney's need for appellate counsel as follows:

> [W]e have an issue on use of the wire tapping, of a pen register [sic]. We had an issue initially when I came into this case on the Pennsylvania Wire Tapping Act.

N.T. 44

\* \* \* \* \* \*

> [I]n a case this complicated, I think that it's unfair to the Defendant, I think it's unfair to the Commonwealth, I think it's unfair to the people of Crawford County to permit you to back out.

N.T. 45.

\* \* \* \* \* \*

> [H]e [Sweeney] is entitled to have his case go up to the Superior Court with an expert criminal lawyer, who is completely familiar with his case handling it. Thats [sic] justice at its best, Mr. Ambrose, and I don't mean to downgrade any Crawford County attorney, but not some young kid out of high school who doesn't know anything.

N.T. 47.

The trial court also expressed concern about the length of any delay involved for a new court-appointed attorney to familiarize himself with the record in the case. Additionally, it was the trial court's position that because present counsel, appellant herein, was already familiar with the proceedings, it would be a relatively simple matter to compose the appellate brief. The trial court reasoned:

> You know if we appointed some young Crawford County attorney, he would have to go back and get a transcript of everything that has happened, he would have to get copies of every paper, it would take him months to even familiarize himself with the record, whereas, you know everything there is to know about this case. You don't have to do any of that.

> You are talking about taking an appeal, and certainly Mr. Sweeney ought to take an appeal, that's his right. You

have already briefed and argued the key issues in this
case. You have already done that.

And, all you would have to do would be to incorporate
those briefs that you have written into a brief for the
Superior Court of Pennsylvania, go down and take a day
and argue the case.

That's the difference between permitting you to withdraw
and not permitting you to withdraw.

(N.T. 43–44). Moreover, the trial court was adamantly
opposed to saddling the populace of Crawford County with
the expense of providing a free transcript and a new,
court-appointed attorney. In response to appellant's pro-
posal that his associate be appointed to handle the appeal,
the trial court stated:

[M]y [sic] alternative was an associate of yours pursue
the case, and if you want your associate to write the
briefs, do all that and go down and argue it in the
Superior Court, so be it. I am not going to order Craw-
ford County, however, to pay your associate and then
have your associate come in and say I want a transcript
of everything that's happened so far your Honor, that's
the only way I can handle this case. I am not going to do
it.

N.T. 47–48.

The view taken by the trial court at sentencing and
reiterated in its Opinion was that the entry of a general
appearance by counsel in a criminal case is, without more,
the equivalent of "locked in" or guaranteed representation
by that counsel through all stages of the proceeding.

Now, your [appellant's] position is, well, your Honor, if
you make me serve, I have to serve for nothing, and
that's not fair to me. In my opinion, when an attorney
enters a general appearance, that that's exactly what he
enters.

He enters an appearance with the intent that he is going
to represent that Defendant. He doesn't enter an appear-

ance for the preliminary hearing or for the first day of
trial or for anything else.

N.T. 44.

.　　.　　.　　.　　.

We believe that, [sic] when a criminal attorney takes a
case of this magnitude and enters a general appearance
that he should be required under these circumstances to
finish the case through the appellate stage.　To desert his
client when the client needs him the most, is contrary to
this Court's concept of legal professionalism.

Trial Court Opinion, p. 4.

We agree that desertion of a client is abhorrent to the
spirit of the legal profession.　It may also form the basis of
a later collateral claim of ineffectiveness.　We also consider
the trial court's regard for the post-sentence rights of
appellant laudable.　Unfortunately, however, in the midst of
its concern for Sweeney's right to competent appellate
counsel, the cost of transcripts and records to the taxpayers
of Crawford County and the length of time elapsing before
any new counsel could familiarize himself with the case, the
trial court at sentencing and in its opinion, overlooked the
one crucial factor which goes to the heart of the instant
appeal and upon which appellant premised his plea to with-
draw from further representation.　That is, the trial court
failed to consider the economics of appellant's continued
representation.

■　The trial court insisted that appellant continue to
represent Sweeney on appeal without appointment or fur-
ther compensation.　The trial court's predicate for this
flows from its belief that because "Mr. Ambrose [appellant
herein] received a substantial fee ... the interests of justice
require that Mr. Ambrose continue through the appellate
stage." (Trial Court Opinion, p. 4).　This conclusion, how-
ever, finds no support in the record.　It is true that the trial
court at the sentencing hearing attempted to ascertain from
appellant the amount of counsel fees the latter had received
so far from Sweeney.　Appellant refused to divulge this
information.　When asked by the trial court to quote a

"ballpark figure", appellant declined, stating that he considered the matter to be a confidential one between attorney and client (N.T. 42, 48–49). Although the trial court pressed appellant no further on this issue, it remained steadfastly opposed to court-appointment of appellant or any other attorney to represent Sweeney on appeal.

While the trial court's position that appellant's receipt of past substantial legal fees more than adequately compensates the latter for future appellate representation lacks record support, we find equally unavailing the Commonwealth's stance in this regard: [5]

> While the Commonwealth is well aware that all attorneys must be concerned to a certain degree with the economics of representing a defendant, *counsel is a member of the legal profession which requires that he must set aside monetary considerations in order to further the interest of his client and those of the justice system.*

Commonwealth's Brief, p. 5; emphasis supplied.

We view this as a rather astonishing revelation, and, in consideration thereof, as an appellate court, we have attempted, unsuccessfully, to discover any case law, statute or rule of court which compels counsel, as part of their obligations to the legal profession, to cast by the wayside all economic considerations relating to the practice of law. Were the Commonwealth's position the accepted norm in the legal profession today, the Rules of Criminal Procedure adopted to establish the procedure for representation of indigents (*see* Pa.R.Crim.P. 316 and 317) and the existence of public defender organizations and legal aid societies to implement and aid court-appointment programs would, indeed, be superfluous.

5. We are at least skeptical of the Commonwealth's standing in this appeal. The dispute giving rise to the instant appeal focuses on appellant's objection to continued representation of Sweeney at the appellate stage and the trial court's entry of the Order appealed from which denies appellant permission to withdraw as Sweeney's counsel. Neither at sentencing nor anywhere else in the record did the Commonwealth voice objection to appellant's attempted withdrawal. The Commonwealth's position is now before us first time on appeal.

Ethical Considerations 2–31 and 2–32 of the Code of Professional Responsibility,[6] which the Commonwealth purports speak to the issue, state only that counsel should continue to represent a client through the appellate process unless permission to withdraw is granted or other counsel substituted (EC 2–31) and that a lawyer's decision to withdraw should be made only after due notice and recommendation of employment of other counsel to protect the welfare of the defendant and to minimize any prejudice to the client as a result of withdrawal (EC 2–32). Our review of the record indicates that the aspirations reflected in these Considerations were heeded to here. Appellant sought permission to withdraw and offered as substitute counsel his law associate. He also prepared a Notice of Appeal on Sweeney's behalf, all to minimize any prejudice resulting from his withdrawal.

On the other hand, we have found that EC 2–16 addresses the question of legal fees,

> EC 2–16. The legal profession cannot remain a viable force in fulfilling its role in our society unless its members receive adequate compensation for services rendered, and reasonable fees should be charged in appropriate cases to clients able to pay them. Nevertheless, persons unable to pay all or a portion of a reasonable fee should be able to obtain necessary legal services, and lawyers should support and participate in ethical activities designed achieve that objective[,]

as does EC 2–17, which provides in relevant part: "[A]dequate compensation is necessary in order to enable the lawyer to serve his client effectively and to preserve the integrity and independence of the profession."

■ Nowhere in the Ethical Considerations cited by the Commonwealth or by us, *supra,* or anywhere else in the Code of Professional Responsibility do we glean any language which directly or by implication even remotely suggests that an attorney is forever bound to serve his client to

6. The Code of Professional Responsibility was adopted by the Pennsylvania Supreme Court effective February 27, 1974.

ultimate disposition and further that he forego compensation in doing so.

■ Appellant asserts that the Order of the trial court, in effect, disregards the import of the statement made to Sweeney in colloquy at the sentencing hearing that counsel would be appointed to represent him on appeal in the event of his indigency. At sentencing, before engaging counsel in debate over the propriety of his request for withdrawal, the trial court, in accordance with Pa.R.Crim.P. 1405(c)(1), advised Sweeney of his right to appellate counsel in the following terms:

You have the right to counsel for taking such an appeal.

\* \* \* \* \* \*

*In the event you cannot afford counsel for the preparation and filing of the motions or taking of the appeal,* you have the right to proceed in forma pauperis *and an attorney will be appointed by the Court for you* free of charge, if you request such an appointment.

Do you understand these rights, sir?

THE DEFENDANT: Yes, sir.

N.T. 34–35; emphasis supplied. Later at the sentencing proceeding and immediately before the exchange between the trial court and appellant concerning the latter's wish to withdraw, Sweeney did request the Court to appoint counsel for him:

THE DEFENDANT: I will need counsel appointed for my appeal.

THE COURT: All right, we will get into that in a moment....

N.T. 39.

In view of what transpired at the sentencing hearing, Sweeney's dilemma is akin to being between the proverbial rock and a hard spot—on the one hand, he wished to pursue an appeal, as is his right; however, he could no longer afford the continued representation of his privately retained counsel, the appellant herein. The trial court's response to Sweeney's request for appointment of counsel appeared to

indicate that appointment of appellate counsel would be forthcoming. Sweeney's expectation of appointed counsel, moreover, was further bolstered by his lack of objection when appellant advised the trial court that his client's family was without funds to retain him (N.T. 40–41). We deem this silence, coupled with Sweeney's record request for appointment of counsel because of his indigency, to be at least an implied acquiescence in appellant's withdrawal, and, as such, an implicit discharge of appellant from further representation.

This being so, we again turn to the Code of Professional Responsibility for guidance. Disciplinary Rule 2–110, entitled "Withdrawal from Employment", provides for mandatory and permissive withdrawal in relevant part as follows:

(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

\*      \*      \*      \*      \*      \*

(4) He is discharged by his client.

(C) Permissive withdrawal.

If DR 2–110(B) is not applicable, a lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

\*      \*      \*      \*      \*      \*

(5) His client knowingly and freely assents to termination of his employment.

\*      \*      \*      \*      \*      \*

In *Commonwealth v. Scheps*, 361 Pa.Super. 566, 523 A.2d 363 (1987), a panel of this court reversed an Order disallowing counsel to withdraw despite his discharge by the client because of the client's inability to pay further legal fees as well as legal fees already accrued. Although the panel members were unable to agree on the rationale for permission to withdraw, the lead opinion premising its

decision on the mandatory withdrawal provision of DR 2–110(B) and the concurrence relying, instead, on the judicial discretion standard of Pa.R.Crim.P. 302(b),[7] both the lead and the concurrence were in accord with the ultimate result—i.e., that the trial court had, under the facts of that case, abused its discretion in not allowing counsel to withdraw.[8]

> [W]here said client … is not in a position to pay for future legal fees … there is no reason to deny an attorney's petition for leave to withdraw. Finally, when the client himself discharges his attorney …. the relationship of attorney-client is terminated. The court's denial of Mr. Lieberman's petition imposes a punishment resulting in the risk of detriment to his career, let alone substantial financial losses. It should not be permitted. After all, it is the client's responsibility and not the attorney's to pay for the heavy costs of trial. *Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102, 109 (1959). In light of the foregoing circumstances, the lower court erred in not allowing counsel to withdraw from this case....

*Id.* (Lead Opinion) 361 Pa.Superior Ct. at 581–82, 523 A.2d at 370. We have already determined that Sweeney had, at least by implication, discharged appellant from further rep-

7. This Rule provides:
   > (b) Counsel for a defendant may not withdraw his appearance except by leave of court. Such leave shall be granted only upon motion made and served on the attorney for the Commonwealth and the client, unless the interests of justice otherwise require.

   The concurrence read this Rule as vesting discretion in the trial courts to permit withdrawal in the interests of justice. It would interpret DR 2–110(B) as requiring what an attorney must do under the circumstances set forth therein.

8. The third panel member dissented. The lead opinion apparently relied on DR 2–110(C)(5) and (6) to permit withdrawal. The dissent disagreed that the trial court abused its discretion in refusing counsel's withdrawal pursuant to DR 2–110(C)(1)(f), which permits withdrawal if the client refuses or ignores an agreement to pay legal fees. The dissent would hold that no "deliberate" disregard of fees existed; rather, defendant there was simply unable to make any further payments and that refusal to allow withdrawal under these circumstances was not an abuse of the trial court's discretion.

resentation after sentencing. Thus, we do not read *Scheps* as compelling a different result here merely because the client there was in arrears on legal fees and the proceeding involved was a potentially protracted trial rather than an appeal.

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." [9] It is true that the mandate of the Sixth Amendment is implemented by the defendant himself when he chooses to retain and pay for private counsel. The state is not involved in this choice. There, the relationship is solely one between private counsel and the client. *See United States ex rel. O'Brien v. Maroney*, 423 F.2d 865 (3d Cir. 1970). However, it becomes the state's affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them. *Id.* The seminal decision in this regard, *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), decreed the lack of assistance of counsel to indigent defendants to be a denial of equal protection guaranteed under the 14th Amendment to the United States Constitution. The *Douglas* court held that assistance of counsel for indigents at the first appellate review stage was compelled by the Equal Protection Clause of the 14th Amendment to the United States Constitution. Following this lead, the High Court held more recently that the guarantees of the Due Process Clause of the 5th Amendment to the United States Constitution call for the effective assistance of counsel for indigents on the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). *Accord Karabin v. Petsock*, 758 F.2d 966 (3d Cir.1985); *Commonwealth v. Berthesi*, 350 Pa.Super. 383, 504 A.2d 891 (1986).

We view the action of the trial court in refusing appellant permission to withdraw tantamount to a denial of Sweeney's guarantee to the effective assistance of counsel at the

9. The Pennsylvania Constitution also provides this guarantee in Article I, § 9 thereof as follows: "Rights of accused in criminal prosecutions[.] In all criminal prosecutions the accused hath a right to be heard by himself and his counsel...."

first level of appellate review despite its order to appellant to serve as Sweeney's appellate counsel. Indeed, we cannot conceive of a situation more compelling than the instant one where the interests of justice required assignment of counsel. Sweeney was without further funds to afford appellate counsel, and appellant herein found himself hamstrung representing a client who could no longer afford his services. Therefore, pursuant to Pa.R.Crim.P. 316(c), the trial court was required to *appoint* counsel. This rule provides:

Rule 316.   Assignment of Counsel

(c) In all Cases

(i) The court, of its own motion, *shall assign* counsel to represent a defendant whenever the interests of justice require it.

(Emphasis added).

From this, we deem the trial court's steadfast insistence akin to a situation where an indigent defendant erroneously asserts his right to appointed counsel of his own choosing. The right to counsel of one's choice is not absolute. *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984); *Commonwealth v. Robinson,* 468 Pa. 575, 364 A.2d 665 (1976). In holding that due process concerns implicate a fair and reasonable opportunity to obtain the assistance of counsel, the *Robinson* court concluded "that although the right to counsel is absolute, there is no absolute right to a particular counsel." *Id.,* 468 Pa. at 593, 364 A.2d at 674, *quoting United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1215 (3d Cir.1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).

No brightline rules exist to determine whether a trial court has abused its discretion in denying a Petition to Withdraw as counsel. A balancing test must be utilized to weigh the interests of the client in a fair adjudication and the Commonwealth in the efficient administration of justice.[10] Thus, a resolution of the problem turns upon a case

---

10. We would also consider as an integral part of this balancing test the interests of the attorney seeking withdrawal, i.e., factors including, but not limited to, the amount of time, money and energy already

by case analysis with particular attention to the reasons given by the trial court at the time the request for withdrawal is denied. *Commonwealth v. Scheps, supra.*

Applying the above rationale to the instant case, the trial court, by its Order of September 5, 1986, decided, in effect, that Sweeney had the unequivocal, absolute right to be represented by his former, privately retained counsel, appellant herein, without further compensation to the latter. Given the reasons recited by the trial court set forth herein for disallowing appellant to withdraw, we conclude that the trial court abused its discretion in denying appellant's request to withdraw as counsel for Sweeney on appeal. Accordingly, we vacate the Order of September 5, 1986, refusing appellant's request to withdraw as counsel and remand for appointment of counsel for John T. Sweeney consistent with this Opinion.

Vacated and remanded for appointment of counsel consistent with this Opinion. Jurisdiction relinquished.

expended on the case and whether counsel's withdrawal would prejudice his client so as to amount to a "desertion" of the latter's cause. Here, in light of appellant's scrupulous regard for the rights of his client by filing a Notice of Appeal on his behalf and proffering alternate appellate representation, which the trial court rejected, we cannot say that appellant's actions amounted to a desertion of his client or worked to his prejudice.