J-S24016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: L.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.S., FATHER, | |
| | No. 1290 MDA 2015 |

Appeal from the Decree June 22, 2015
In the Court of Common Pleas of Berks County
Orphans' Court at No(s): 84154

| | |
|---|---|
| IN RE: M.S., JR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.S., FATHER, | |
| | No. 1291 MDA 2015 |

Appeal from the Decree June 22, 2015
In the Court of Common Pleas of Berks County
Orphans' Court at No(s): 83169

| | |
|---|---|
| IN RE: T.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.S., FATHER, | |
| | No. 1292 MDA 2015 |

Appeal from the Decree June 22, 2015
In the Court of Common Pleas of Berks County

Orphans' Court at No(s): 83168

BEFORE: GANTMAN, P.J., BOWES, AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.: **FILED APRIL 01, 2016**

M.S. ("Father") appeals from the June 22, 2015 decrees that granted the petitions filed by Berks County Children and Youth Services ("BCCYS") to terminate his parental rights to his three children, T.S., M.S., Jr., and L.S.[1] As the lack of relevant transcripts precludes our review of Father's issue and Father has implicitly abandoned this appeal, we hereby affirm and grant private counsel's request to withdraw from representation.

This family has a protracted history with child service agencies that preceded the births of T.S. in 2007, M.S., Jr. in 2008, and L.S. during 2013, respectively. We do not revisit those proceedings herein. As it relates to the children in the above-captioned appeals, the orphans' court summarized the facts and procedural history as follows:[2]

> [O]n August 24, 2012, BCCYS took emergency custody of . . . T.S., and M.S., Jr. A detention hearing was held on August 27, 2012, and the . . . children remained in placement. Both Mother and Father tested positive for cocaine and opiates at the time.

---

[1] The orphans' court also terminated the parental rights of birth mother.

[2] As noted in the body of this memorandum, Father declined to make arrangements with the court reporter to produce a transcript of the evidentiary hearing. Thus, no written record of testimony exists. The orphans' court relied upon its recollection of the hearing and approximately 195 pages of exhibits to summarize the underlying facts and address the merits of Father's argument. The exhibits were not included in the certified record transmitted to this Court on appeal.

Mother also tested positive for methamphetamines, amphetamines, and benzodiazepines. The [two] children were declared dependent on August 29, 2012, and temporary custody was transferred to BCCYS for placement purposes. Mother and Father were ordered to participate in supportive, community based services. [BCCYS filed petitions to terminated Mother and father's parental rights to T.S. and M.S. but the petitions were withdrawn on November 26, 2013 because the children had been reunited with Mother and Father. Meanwhile, L.S. was born during October 2013.]

Mother and Father were minimally compliant with services initially after the placement. Both Mother and Father failed to attend domestic violence evaluations, failed to comply with [substance abuse] evaluations, and minimized their mental health and substance abuse issues.

. . . .

BCCYS filed a Petition for Emergency Custody on October 7, 2014, alleging the inability to assure the safety and well - being of T.S., M.S., Jr., and L.S. so long as they remained in the care of Mother and Father. BCCYS asserted that the children's safety was threatened as a result of Mother's relapse on methamphetamines as well as Father being indicated as a perpetrator of sexual abuse. The three children were ordered to remain in foster care pending a full hearing. On October 15, 2014, Judge Scott D. Keller ordered that T.S., M.S., Jr., and L.S. were dependent children, and that temporary legal custody transferred to BCCYS for placement purposes with a concurrent goal of adoption and return to the most appropriate parent. . . .

Trial Court Opinion, 8/24/15, at 8-10 (citations omitted).

On April 9, 2015, BCCYS filed petitions to terminate Mother and Father's parental rights to T.S., M.S., Jr., and L.S. pursuant to 23 Pa.C.S. § 2511(a)(1) and (2). On April 21, 2015, the Court appointed counsel for the children, issued notice to Father of his right to counsel, and provided Father with an affidavit of destitution to complete if he desired free legal

representation. There is no indication in the record that Father completed the affidavit or requested the assistance of appointed counsel. Instead, Father retained Francis Walsh, Esquire, who entered his appearance on June 22, 2015. Following an evidentiary hearing, the orphans' court entered an order terminating Father's parental rights to T.S., M.S., Jr., and L.S. These appeals followed, which we consolidated *sua sponte*.

Father failed to file statements of errors complained of on appeal concurrent with his notices of appeal as directed by Pa.R.A.P. 1925(a)(2)(i). Instead, twenty-two days after the appeals were filed, he submitted Rule 1925(b) statements that raised the identical complaint:

> The evidence presented against the . . . Father at the Termination of Parental [Rights] Hearing was insufficient to terminate his rights because the competence [sic] evidence did not show that [Father] abandoned, neglected, nor abused [T.S., M.S., Jr., and L.S.].

Concise Statement of Matters Complained of on Appeal, 8/13/15, at 1.

On September 13, 2015, Attorney Walsh filed an application with this Court requesting a sixty-day extension of time to submit Father's brief, which was originally due on September 28, 2015. Noting that the instant consolidated appeals were designated as Children's Fast Track cases, we granted the request partially and extended the due date until October 16, 2015. Father failed to satisfy that deadline, and on November 24, 2015, we entered an order directing counsel to file Father's brief within fourteen days or face potential sanctions.

Attorney Walsh failed to file Father's brief by November 24, 2015. Instead, on December 10, 2015, he filed a motion to withdraw the consolidated appeals. In that motion, Attorney Walsh averred that Father refused to pay the costs associated with obtaining the notes of testimony from the June 22, 2015 evidentiary hearing, ignored counsel's repeated attempts to contact him by telephone, and disregarded the efforts of Father's brother, Attorney Walsh's client in an unrelated matter, to have Father participate in this appeal. After Attorney Walsh left Father a telephone message advising him that he intended to seek the withdrawal of these appeals if Father continued to avoid him, Father still refused to establish contact.

On December 15, 2015, this Court denied counsel's motion to withdraw the consolidated appeals, and instructed counsel to file a petition to withdraw as counsel pursuant to *Anders v. California*, 386 US 738 (1967), if warranted, and to comply with the procedural dictates of *Anders* and its progeny. We mailed Father a copy of that order, but he did not respond. On December 24, 2015, counsel for Father filed an *Anders* brief and a petition to withdraw from representation. He avowed, "[Father] has basically abandoned this appeal." *Anders* brief at 10. This Court entered an order on January 11, 2016, wherein it deferred the disposition of the petition to this panel and notified Father directly that "he may file a brief either on his own behalf or through newly retained counsel . . . no later than

- 5 -

twenty-one (21) days from the date of this order." Per Curiam Order, 1/11/16, at 1. Father neglected to respond or file a merits brief.

At the outset, we address Father's failure to obtain the notes of testimony and observe that the omission prevents our review of the issues raised in the consolidated appeal.[3] In **Commonwealth v. Preston**, 904 A.2d 1, 6–7 (Pa.Super. 2006) (*en banc*), this Court discussed the significance of the certified record when addressing the merits of an appellate argument. We explained,

> This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. This requirement is not a mere "technicality" nor is this a question of whether we are empowered to complain *sua sponte* of *lacunae*[4] in the record. In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.

*Id*. at 6–7 (internal citations omitted).

---

[3] As we may not address the merits of the appeal without first reviewing an attorney's request to withdraw, we generally dispose of **Anders** petitions at the outset of our review. **Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa.Super. 2005). However, mindful of the fact that Attorney Walsh is seeking to withdrawal based upon Father's abandonment of this appeal, as evinced by his refusal to contact counsel and confirm the request for the notes of testimony, we discussed that issue first as a matter of judicial convenience.

[4] Merriam-Webster.com defines *lacuna* as "a blank space or a missing part." **See** http://www.merriam-webster.com/dictionary/lacuna

As the appellant, it was Father's fundamental responsibility to ensure that the certified record contained all of the materials necessary for appellate review. Instantly, however, Father inexplicably failed to request the notes of testimony from the June 22, 2015 hearing concerning the termination of his parental rights to his three children. Pennsylvania Rule of Appellate Procedure 1911 outlines the requirement to obtain transcripts for appellate review as follows:

> **(a) General rule.** The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 5000.1 et seq. of the Pennsylvania Rules of Judicial Administration (court reporters).
>
> . . . .
>
> **(d) Effect of failure to comply.** If the appellant fails to take the action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal.

Pa.R.A.P. 1911(a) and (d). Father neglected this obligation.

Moreover, recognizing that an indigent parent should not be held responsible for the costs associated with transcribing the evidentiary hearing, we observe that the certified record confirms that Father was never designated *in forma pauperis* ("IFP") status in this appeal nor has he averred that he is indigent at any point in the present orphans' court proceedings. *See* Pa.R.A.P. 551 ("A party who has been granted leave by a lower court to

proceed in forma pauperis may proceed in forma pauperis in an appellate court[.]"). Similarly, there is no indication that Father advised Attorney Walsh to request automatic approval of IFP status pursuant to Rule 552(d), which provides ("If the applicant is represented by counsel who certifies on the application or by separate document that the applicant is indigent and that such counsel is providing free legal service to the applicant, the clerk of the lower court shall forthwith enter an order granting the application."). Indeed, Father paid the $85.00 filing fee with his notice of appeal, and as noted *supra*, the record is clear that Father neglected to complete the affidavit of destitution that BCCYS served on him contemporaneously with its notice of the present petition to involuntarily terminate his parental rights. Thus, even to the extent that the cost associated with transcribing the notes of testimony might have caused Father to cease litigating this appeal, that circumstance does not excuse his inaction in light of his failure to seek IFP status.

Additionally, we note that Attorney Walsh was not obligated to pay for the notes of testimony. It is beyond cavil that a non-indigent defendant bears the financial burdens associated with his criminal defense. ***See Commonwealth v. Novak***, 150 A.2d 102, 109 (Pa. 1959) ("It is the client's responsibility and not the attorney's to pay for the heavy costs of trial."). While ***Novak*** is a criminal case, considering the nature of the involuntary termination proceedings, this principle applies equally, herein. Thus, absent

the orphans' court's determination that Father could not afford to contest BCCYS's petition to terminate his parental rights, Father is required to fulfill the financial obligations of his defense.

Having addressed Father's obligation to obtain the relevant notes of testimony, we next discuss how that omission impedes our ability to conduct meaningful appellate review of the orphans' court's order terminating his parental rights. *See Preston*, *supra* at 6-7. Without the transcripts from the evidentiary hearing, we cannot address Father's challenge to the sufficiency of the evidence supporting the orphans' court's determination, the only challenge that he raised in the Rule 1925(b) statement. Accordingly, the issue is waived. *Commonwealth v. Little*, 879 A.2d 293, 301 (Pa.Super. 2005) (appellant's failure to provide reviewing court with complete certified record results in waiver). As there is no basis on which relief can be granted, we are constrained to affirm.

Next, we address Attorney Walsh's petition to withdraw in light of our disposition herein. In *In re V.E.*, 611 A.2d 1267 (Pa.Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. We stated that counsel **appointed** to represent an indigent parent on appeal from a decree involuntarily terminating parental rights may, after a conscientious and thorough review of the record, petition this Court for leave to withdraw from representation and submit an *Anders* brief. *Id*. at 1275. In *Commonwealth v. Santiago*, 978 A.2d 349, 361

- 9 -

(Pa. 2009), our Supreme Court altered our application of the **Anders** briefing requirements to permit counsel to fully articulate his or her conclusion that the appeal is frivolous. The **Santiago** Court did not change the remaining procedural requirements that court-appointed counsel must satisfy in requesting to withdraw from representation under **Anders**.

Preliminarily, we highlight that counsel was not court appointed and Father was never designated indigent.[5] **Anders** and its progeny, including **In re V.E.**, applies only to petitions to withdraw filed by attorneys appointed to represent indigent parties. **See Anders**, **supra** at 739 (addressing "the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction); **id**. at 745 ("This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation

---

[5] We note that, in relation to the initial petition for termination that was withdrawn during November 2013, the certified record includes the cover sheet of a memo that a BCCYS caseworker sent to the orphans' court regarding Mother's affidavit of destitution and her request for substitute counsel in relation to that petition. The agency's coversheet is tangentially relevant herein because a box was checked on that form that indicated that Father had been appointed counsel—although the area on the form where counsel should have been identified was blank. That same form states that Father was previously represented by Mary Favinger, Esquire, who, curiously, is the attorney that Mother had requested to be appointed as her substitute counsel and who was eventually appointed to represent Mother during those brief proceedings before the orphans' court in 2013. No other document in the certified record suggests that Father was ever represented by appointed counsel and nothing indicates that Attorney Walsh was appointed by the orphans' court.

but who are able to afford the retention of private counsel."); ***Santiago***, ***supra*** (modifying Pennsylvania's procedure for withdrawal of court-appointed appellate counsel to impose obligation to explain why appeal is frivolous ); and ***In re V.E.***, ***supra*** at 1275 ("we hold that appointed counsel seeking to withdraw representation must submit an advocate's brief, as contemplated in ***Anders***"). Since Attorney Walsh was not appointed counsel and Father was not designated IFP or determined to be an indigent parent in this case, ***In re V.E.***, is not applicable.[6]

Additionally, it is obvious that Attorney Walsh originally sought to withdraw from representation due to Father's utter disinterest and refusal to pay for material necessary to litigate this appeal. Counsel filed the ***Anders*** brief in response to the reference in our December 15, 2015 order that "if appropriate" counsel may file a petition to withdraw as counsel pursuant to ***Anders***, ***Santiago***, and ***In re V.E.***. ***See*** *Per Curiam* Order, 12/15/15, at 1. Attorney Walsh reasonably mistook our qualified reference to ***Anders*** and its progeny, as a directive and he attempted to shoehorn his petition to withdraw into the facially inapplicable parameters of those cases.

_____

[6] As the involuntary termination of parental rights is analogous to a criminal proceeding, at least as it relates to the right to legal counsel, we note that Attorney Walsh was required to file a motion to withdraw from representation regardless of whether he was privately retained or court appointed. ***See Commonwealth v. Librizzi***, 810 A.2d 692 (Pa.Super. 2002) ("Counsel is also reminded that an appearance may be withdrawn only by leave of court [pursuant to] Pa.R.Crim.P. 120.").

Nevertheless, since alternative bases for withdrawal exist, Attorney Walsh's focus is not disastrous. We previously recognized, "[f]or a variety of reasons, from ethical reasons to financial concerns, counsel properly may seek to withdraw from representing a client." **Commonwealth v. Keys**, 580 A.2d 386, 387 (Pa.Super. 1990) *citing* **Commonwealth v. Turner**, 544 A.2d 927 (1988) (withdrawal for lack of merit); **Commonwealth v. Roman**, 549 A.2d 1320, 1320-23 (1988) (withdrawal based on nonpayment of legal fees).

In **Commonwealth v. Sweeney**, 533 A.2d 473 (Pa.Super. 1987), and **Roman**, **supra**, this Court addressed the proper inquiry when privately-retained counsel seeks to withdraw from representation in a criminal case due, at least partially, to nonpayment. In **Sweeney**, **supra**, a criminal defendant, Sweeney, retained an attorney to represent him through trial. Sweeney was convicted of armed robbery, and after filing a notice of appeal from the judgment of sentence, counsel filed with the trial court a petition to withdraw. The trial court denied the motion and "insisted that [counsel] continue to represent Sweeney on appeal without appointment or further compensation." **Id**. at 477. On appeal, this Court concluded that privately retained counsel was not required to continue to represent Sweeney without compensation. We stated,

> [I]n the midst of its concern for Sweeney's right to competent
> appellate counsel, the cost of transcripts and records to the
> taxpayers of Crawford County and the length of time elapsing

before any new counsel could familiarize himself with the case, the trial court . . . overlooked the one crucial factor which goes to the heart of the instant appeal and upon which appellant premised his plea to withdraw from further representation. That is, **the trial court failed to consider the economics of appellant's continued representation**.

*Id*. (emphasis added).

Thereafter, we observed, "we have attempted, unsuccessfully, to discover any case law, statute or rule of court which compels counsel, as part of their obligations to the legal profession, to cast by the wayside all economic considerations relating to the practice of law." *Id*. Finally, we rejected the alternative argument that, as "a member of the legal profession . . . counsel [was required to] set aside monetary considerations in order to further the interest of his client and those of the justice system." *Id*. We observed that, if forced representation was "the accepted norm in the legal profession . . ., the Rules of Criminal Procedure adopted to establish the procedure for representation of indigents[,] . . . the existence of public defender organizations[,] legal aid societies[,] . . . and . . . court-appointment programs would, indeed, be superfluous." *Id*. at 477-478.

Although the aspect of the *Sweeney* Court's rationale that is most relevant to the case at bar is the Court's rejection of servitude, that was but one component of our decision. We also contemplated ethical considerations under the Code of Professional Responsibility and the facts that counsel: (1) had been retained only to represent Sweeney through post-trial motions; (2)

sought to minimize prejudice by offering an associate as substitute counsel and preparing the notice of appeal; and (3) obtained the "implied acquiescence" of his client that amounted to "an implicit discharge . . . from further representation." *Id*. at 479. Accordingly, we found that the trial court abused its discretion in denying counsel's motion to withdraw.

Subsequently, in *Roman*, *supra*, we invoked the rationale of *Sweeney* and a similar case, *Commonwealth v. Scheps*, 523 A.2d 363, Pa.Super. 1987), to hold that a privately-retained attorney was entitled to withdraw from representation in two drug cases because the client failed to tender payment of $12,000 due for services rendered pursuant to a fee agreement. We found dipositive the primary conclusions of both the *Sweeney* and *Scheps* Courts that a client's failure to render payment was grounds to permit the withdrawal of privately-retained counsel, especially when counsel minimized the potential for prejudice by filing a requested appeal to this Court, and the client expressly or implicitly consented to withdrawal. *Id*. at 336-337.

The facts of the foregoing cases are analogous to the present scenario. Comparable to counsel in *Roman* and *Sweeney*, Attorney Walsh mitigated prejudice by filing the requested notice of appeal from the order terminating Father's parental rights prior to seeking to withdraw. In addition, Attorney Walsh discussed with Father the costs associated with the continued litigation of his appeal and he sought to communicate with Father about

paying for the notes of testimony. Father not only refused to procure the transcripts necessary for appellate review, but he also abandoned the appeal by severing contact with Attorney Walsh. Father's unqualified indifference, as evinced by his failure to respond to our correspondence, thwarted Attorney Walsh's ability to draft a brief that addressed the merits of the requested appeal. Finally, by consistently rebuffing Attorney Walsh's numerous attempts to communicate, including the warning that counsel would seek to withdraw the appeals if Father did not respond, is evidence that Father tacitly consented to withdrawal. Thus, just as the clients in **Roman**, **supra**, and **Sweeney**, **supra**, failed to pay their privately-retained attorneys for their continued representation, in the case at bar, Father, a non-indigent parent, refused to pay for materials necessary to continue to litigate his appeal and implicitly renounced his interest in the case. The rationale expressed in **Roman** and **Sweeney** is applicable to the instant case, and while it is not dispositive, it is persuasive.

Petition to withdraw from representation filed by Francis Walsh, Esquire is granted. Decrees affirmed. Jurisdiction relinquished.

Judge Musmanno joins the memorandum.

President Judge Gantman Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/2016