J-S34029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES FRANCIS CALDERONE | : | |
| | : | |
| Appellant | : | No. 1334 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 17, 2019
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-CR-0000890-2015

BEFORE: PANELLA, P.J., BENDER, P.J.E., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 30, 2020**

Appellant, James Francis Calderone, appeals from the judgment of sentence of 33¼ to 82½ years' incarceration, imposed after a jury convicted him of four counts each of attempted murder and recklessly endangering another person, and one count of aggravated assault. Herein, Appellant challenges the trial court's denial of his motion to appoint a psychologist to evaluate him prior to sentencing. After careful review, we affirm.

The trial court summarized the pertinent facts and procedural history of this case, as follows:

> The present case arises out of an incident which occurred on November 9, 2015[,] during which [Appellant], with an AK-47 type weapon and other firearms[,] and a large cache of ammunition, opened fire at a maintenance worker (Mr. Hock) and three (3) police officers (Rafferty, Martin and Shultz) at a local industrial development complex. In the melee, Officer Martin was grazed in the head with a metal fragment believed to be from a bullet shot out of [Appellant's] weapon. The [o]fficers opened fire

only after [Appellant] refused to put down his weapons, locked a round in the AK-47 chamber and raised the weapon toward the officers. After exchanging fire, [Appellant] was shot in the chest and incapacitated.

On June 2, 2016, [Appellant] filed a ["]Motion for Leave to Secure a Preliminary Psychiatric/Mental Health Examination of Defendant["] (the "First Motion"). The First Motion was granted by [o]rder dated June 23, 2016. [Appellant] was examined twice by Richard E. Fischbein, M.D., a board certified psychiatrist, once on May 20, 2017[,] and once on October 12, 2018. Reports of each examination, with various opinions, were entered into the trial record as Exs. D5 (report dated May 24, 2017) and D6 (report dated October 12, 2018).

Trial occurred from May 8, 2019 to May 10, 2019. During the trial, Dr. Fischbein testified consistent[ly] with his reports.

In Ex. D5, Dr. Fischbein diagnosed [Appellant] with [a]djustment [d]isorder [with] [m]ixed [e]motional [f]eatures. Dr. Fischbein testified that [Appellant's] conduct "did not add up," given that he did not have any other violent episodes, as reported by [Appellant]. Dr. Fischbein stated that [Appellant] did not have … Antisocial Personality Disorder. Dr. Fischbein testified that [Appellant] consistently professed to have no memory of the incident. With no objection from the Commonwealth, Dr. Fischbein was permitted to opine that the event was out of character for [Appellant] and that he believed [Appellant's] reporting to him.[1] Dr. Fischbein confirmed that, very recently [before] the incident, [Appellant] had found out that he had impregnated his next door neighbor and was concerned about the consequence[s] to his marriage. Dr. Fischbein stated that [Appellant] had alleged that his wife had put Xanax into [Appellant's] coffee the morning of the incident, and that Dr. Fischbein believed [Appellant] and his claim that he slipped into a delirium as a result. Dr. Fischbein found [Appellant] to be presently competent to stand trial, and testified that he is doing rather well in prison, with a balanced outlook. In Ex. D5, Dr. Fischbein opined that [Appellant's] psychiatric illness had a "very significant" effect on [Appellant's] behavior during the incident. Dr. Fischbein opined that [Appellant] was[,] "at [a] minimum," guilty but mentally ill, and "wonder[ed]" if [Appellant] lacked intent during the incident.

¹ Dr. Fischbein testified that the incident was "out of character" for [Appellant], and that [Appellant] "struck [him] as honest." Dr. Fischbein's testimony included several such statements.

In Ex. D6, Dr. Fischbein went beyond his opinions as expressed in Ex. D5. Dr. Fischbein interviewed several witnesses and based his opinions on their recounting of events. In Ex. D6, Dr. Fischbein again opined that [Appellant] was diagnosed with [a]djustment [d]isorder with [m]ixed [e]motional [f]eatures, with anxiety and depression. He then opined that, during the incident, [Appellant] "was suffering from a state of delirium, most likely as a result of the surreptitious drugging of his drinks by his wife…[.]" There was some evidence of that at trial, [but] [Appellant's] wife testified that she did not drug [Appellant's] coffee. Dr. Fischbein opined that [Appellant's] behavior was "out of his volition and control," and that his wife's drugging of his drinks resulted in [his] "involuntarily altering his behavior." Dr. Fischbein continued to be of the opinion that [Appellant] was competent to stand trial, but opined that [Appellant] was not able to appreciate the wrongfulness of his actions and that he was legally insane at the time of the incident.

Dr. Fischbein testified that [Appellant] was not able to form a specific intent to commit the crimes with which he was charged. Dr. Fischbein confirmed that he charged approximately $7,970 for his two (2) interviews and reports.

On May 10, 2019, a jury convicted [Appellant] of four (4) counts of Attempted Murder [(18 Pa.C.S. §§ 901(a), 2502(a))], four (4) counts of Aggravated Assault ([18 Pa.C.S.] § 270[2](a)(1): Attempt to cause serious bodily injury)[)], one (1) count of Aggravated Assault ([18 Pa.C.S.] § 270[2](a)(3): Causing bodily injury to a police officer), and four (4) counts of Recklessly Endangering Another Person ([18 Pa.C.S.] § 2705).

Trial Court Opinion (TCO), 9/10/19, at 1-3.

Appellant's sentencing was scheduled for July 17, 2019. On May 16, 2019, he filed a "Motion to Secure a Psychological Evaluation of Defendant for Possible Sentence Mitigation." Therein, Appellant requested that the court appoint Dr. Michael A. Church, Ph.D., "to conduct a battery of psychological

tests[,] including[,] but not limited to[,] the [Minnesota Multiphasic Personality Inventory (MMPI),] to discover any mitigating psychological issues." Motion, 5/16/19, at 2 (unnumbered). In addition to the $3,500 fee for Dr. Church to examine Appellant and draft a report, Appellant asked the court to order the payment of the additional fee of $1,800 for the doctor's testimony at Appellant's sentencing hearing. *Id.*

On June 19, 2019, the court conducted a hearing on Appellant's motion. The court noted that Dr. Fischbein had twice examined Appellant, drafted two reports, and testified, all at the cost of "around $7,000." N.T. Hearing, 6/19/19, at 2. The court questioned what Appellant hoped to discern from an additional examination by Dr. Church. *Id.* at 3-4. Defense counsel stated that Appellant wished to establish that he does not have antisocial personality disorder, and that it is unlikely he will reoffend if he is not incarcerated. *Id.* at 5. In response, the Commonwealth noted that Dr. Fischbein had opined "on the last page of his first report … that … [Appellant] does not appear to [have] … antisocial personality disorder…." *Id.* at 6. Additionally, a probation officer present at the hearing stated that an assessment of Appellant's risk of reoffending could be conducted and included in the pre-sentence investigation (PSI) report. *Id.* Thus, at the close of the hearing, the court denied Appellant's motion for a psychological evaluation by Dr. Church, but ordered that the Columbia County Adult Probation and Parole Office conduct "some kind of assessment as to the risk of recidivism in regard to the violence which is the subject of the present case." *Id.* at 9.

On July 17, 2019, the court conducted Appellant's sentencing hearing. At the outset, the court confirmed that it had received a PSI report. N.T. Sentencing, 7/17/19, at 2. Additionally, defense counsel noted that there had been a recidivism-risk assessment conducted using the "Ohio Risk Assessment System Community Supervision Tool." *Id.* at 4. Defense counsel made no objection to the adequacy or accuracy of that report; instead, he marked and admitted it into the record. *Id.* Further, Dr. Fischbein's two, pretrial psychiatric evaluations of Appellant were admitted for the court's consideration, and the doctor also took the stand at the sentencing proceeding. *Id.* Dr. Fischbein testified that he could "very confidently say [that Appellant] is an individual who does not have antisocial personality disorder." *Id.* at 14. He also opined that Appellant's not having antisocial personality disorder "makes his overall prognosis and learning capabilities and taking responsibility for bad events much more likely. And the risk of recidivism or ever appearing in front of this [c]ourt again is greatly reduced." *Id.*

In addition, Dr. Fischbein testified that he had reviewed the Ohio Risk Assessment System Community Supervision Tool. He explained that Appellant had received a "low score" on that assessment, "which suggests that he is not a hardened criminal and the risk of recidivism or needing strict supervision, when and if he gets out of [p]rison…, does not have to be intensive. … [H]e would in all likelihood abide by whatever recommendations are made by the court." *Id.* at 15.

At the conclusion of the hearing, the court sentenced Appellant to the aggregate term stated *supra*. He filed a timely motion for reconsideration of his sentence. Before the court ruled on Appellant's motion, he filed a notice of appeal on August 8, 2019. The court denied his post-sentence motion on August 12, 2019.[1] Appellant thereafter complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court filed a Rule 1925(a) opinion on September 10, 2019.

Herein, Appellant states the following issue for our review:

1) Did the [trial c]ourt err and deny due process in denying this indigent defendant the right to be able to present all significant information at sentencing, especially since it appears that the [c]ourt was going to impose the equivalent of a virtual life sentence on … Appellant? Did the [trial c]ourt err when it found that the … []MMPI[] test[,] when used for purposes of sentencing[,] was cumulative of a forensic evaluation performed by a psychiatrist who focused solely on whether Appellant was legally insane at the time this incident occurred and performed no testing of Appellant?

Appellant's Brief at 2.

Initially, we note that, "[t]he decision whether to appoint an expert witness to assist in the preparation of a defense is within the sound discretion of the trial court." ***Commonwealth v. Curnutte***, 871 A.2d 839, 842 (Pa.

---

[1] This Court has explained that, "[u]nder Pa.R.Crim.P. 720(A)(2), no direct appeal may be taken by a defendant while his post-sentence motion is still pending." ***Commonwealth v. Ratushny***, 17 A.3d 1269, 1271 n.4 (Pa. Super. 2011) (citing Pa.R.Crim.P. 720, Comment). However, the ***Ratushny*** panel found that, pursuant to Pa.R.A.P. 905, we may "treat [an] appellant's premature notice of appeal as having been filed after entry of the order denying post-sentence motions." ***Id.*** We apply this rationale to Appellant's premature notice of appeal in the present case.

Super. 2005) (citing **Commonwealth v. Gelormo**, 475 A.2d 765, 769 (Pa.

Super. 1984)). Here, the trial court explained the basis for its decision to

deny Appellant's motion for the appointment of a psychologist, as follows:

> A hearing was held on the … [m]otion on June 19, 2019[,] at which the trial record of Dr. Fischbein's testimony and his reports were incorporated by reference. At that hearing, this [c]ourt asked counsel for [Appellant] what opinions he was seeking in addition to those already elicited in Exs. D5 and D6, and counsel responded with a desire to conduct an MMPI, … which assesses personality traits and psychopathology. In his two (2) reports, Dr. Fischbein already opined as to [Appellant's] personality traits, … mental health diagnosis[,] and the pathology behind his opinions.
>
> Defense counsel also cited a desire to secure an opinion from Dr. Fischbein to the effect that [Appellant] did not possess an antisocial personality. It was pointed out to counsel that Dr. Fischbein's reports and testimony at trial already expressed those opinions. Finally, defense counsel sought a risk assessment, which was ordered to be performed by the Columbia County Adult Probation and Parole Office, and was admitted into the record at sentencing.
>
> This [c]ourt issued an [o]rder dated June 19, 2019[,] denying the … [m]otion, except that [the court] ordered the … risk assessment. In [the o]rder of June 19, 2019, [the court] cited the fact that Dr. Fischbein rendered opinions on mitigation of responsibility and insanity[,] and that [Appellant] did not have an antisocial personality. This [c]ourt stated that further psychiatric evaluations would be redundant. Unstated in the [o]rder of June 19, 2019[,] is the fact that approximately $7,970.00 in Columbia County taxpayers' money ha[d] already been spent in the present case on psychiatric evaluations.
>
> [Appellant] has been accorded his right to psychiatric evaluations, and the record contains Dr. Fischbein's opinions regarding [Appellant's] diagnosis, his lack of specific intent, his lack of diagnosis of antisocial personality, and the alleged pathology, *i.e.*, [that Appellant's] wife spiked his coffee with drugs and he suffered from delirium and depression from impregnating his next door neighbor. This evidence was heard by this [c]ourt,

and in its capacity as the sentencing [c]ourt, this [c]ourt, like the jury, attributed no weight or credibility to those opinions due to their lack of credible foundation. It is submitted that this [c]ourt was well within its discretion to deny the aspect of the … [m]otion which sought public funding for further psychiatric evaluations of [Appellant].

TCO at 5-6.

On appeal, Appellant avers that the trial court abused its discretion by denying his motion for the appointment of a psychologist to conduct the MMPI evaluation before the sentencing proceeding. He contends that the court's decision violated his due process right to present the "fullest information possible" concerning his "life and characteristics" for the court's consideration in fashioning his sentence. Appellant's Brief at 21-22 (citation omitted). He argues that Dr. Fischbein's evaluation is not analogous to an MMPI assessment, which he discusses in detail in his brief. *See id.* at 26-28. Appellant stresses that Dr. Fischbein's pretrial examinations focused on discerning his state of mind *at the time of the shooting*, not his mental health at the time of sentencing. Therefore, he maintains that the court erred in concluding that it would be redundant to appoint another psychologist to conduct an MMPI assessment.

Appellant also insists that the court's denial of his motion for a psychological evaluation was improperly premised on the cost thereof. In support, he relies on *Commonwealth v. Konias*, 136 A.3d 1014 (Pa. Super. 2016), where we stated:

It is well-established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings. *Commonwealth v. Curnutte*, 871 A.2d 839, 842

(Pa. Super. 2005). The state has an "affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them." **Commonwealth v. Sweeney**, … 533 A.2d 473, 480 ([Pa. Super.] 1987). Procedural due process guarantees that a defendant has the right to present competent evidence in his defense, and the state must ensure that an indigent defendant has fair opportunity to present his defense. **Ake v. Oklahoma**, 470 U.S. 68 … (1985).

**Id.** at 1019.

Appellant has failed to demonstrate an abuse of discretion by the trial court. The court afforded Appellant his due process right to present his defense by appointing Dr. Fischbein, who conducted two assessments, drafted reports, and testified at both Appellant's trial and sentencing hearing. The court was permitted to consider the cost expended on Dr. Fischbein's services and testimony in determining whether to grant Appellant's request for an additional psychological evaluation. Nothing in **Konias** suggests otherwise.

We also discern no abuse of discretion in the court's conclusion that the information sought by Appellant in requesting another psychological evaluation was cumulative of the opinions offered by Dr. Fischbein. First, at the hearing on Appellant's motion, he informed the court that an additional psychological evaluation was necessary to establish that he does not have antisocial personality disorder. However, Dr. Fischbein opined, in both his pretrial reports and testimony at the sentencing hearing, that Appellant does not have antisocial personality disorder. While Appellant now provides a lengthy discussion of the MMPI assessment, arguing that it would have provided different information that was more pertinent to the court's

- 9 -

sentencing considerations, he did not present this detailed argument to the court at the hearing on his motion. Therefore, he cannot now argue that the court erred by failing to appoint a psychologist to conduct the MMPI.

Second, Appellant informed the court that another psychological evaluation was necessary to assess his likelihood of reoffending. In response, the court ordered a recidivism-risk assessment to be conducted before the sentencing hearing. Defense counsel made no objection to the assessment that was ultimately conducted, and moved to enter it into the record at the sentencing hearing. Moreover, Dr. Fischbein explained, in his testimony at the sentencing proceeding, that the assessment indicated that Appellant poses a low-risk of reoffending.

In sum, it is apparent that the record before the sentencing court already contained the information that Appellant sought to obtain via another psychological evaluation. Accordingly, we discern no abuse of discretion in the court's denial of Appellant's request for an additional evaluation by another psychologist.[2]

_____

[2] We observe that, at the close of Appellant's brief, he argues that the court's sentence was excessive, given the evidence that he presented a low risk of reoffending. **See** Appellant's Brief at 32-34. However, Appellant's prior attorney, who filed his Rule 1925(b) statement, failed to raise this issue, thereby waiving it for our review. **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Rolan**, 964 A.2d 398, 409 (Pa. Super. 2008) (citations omitted) (stating "[w]here the trial court orders an [a]ppellant to file a concise statement of matters complained of on appeal under [Rule] 1925, any issue not contained in that statement is waived on appeal"). To the extent Appellant asks this Court to remand for his present counsel to file a new Rule 1925(b)

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/30/2020

---

statement to raise this excessive-sentencing claim, as well as several other "critical issues" not set forth in prior counsel's Rule 1925(b) statement, we cannot provide such relief. **See** Appellant's Brief at 38-47; **see also Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011) ("Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; [and] the courts lack the authority to countenance deviations from the Rule's terms…."). Instead, Appellant must plead and prove, in a timely-filed petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, that the attorney who filed his Rule 1925(b) statement acted ineffectively by not preserving the at-issue claims.