**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James MONTGOMERY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 12, 2002.
Filed May 15, 2002.

---

Peter Rosalsky, Philadelphia, for appellant.

Hugh Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before FORD ELLIOTT, JOYCE and BECK, JJ.

BECK, J.

¶ 1 In this appeal, we are asked whether the collateral order doctrine permits us to review an order of the Common Pleas Court that reversed a Municipal Court order setting out specific instructions for a pretrial line-up. We conclude that the collateral order doctrine is not implicated under these circumstances and so quash the appeal as interlocutory.

¶ 2 The apparent trigger for the controversy in this pretrial appeal is a research report published by the United States Department of Justice in October 1999 and entitled *"Eyewitness Evidence, A Guide for Law Enforcement"* (hereinafter "Report"). The Report, as generated by the National Institute of Justice (NIJ), has the "primary purpose of recommending [the] best practices and procedures for the criminal justice community to employ in investigations involving eyewitnesses." Report at 3.

¶ 3 In an introductory section, the impetus for the Report was identified:

After reviewing the National Institute of Justice Research Report, *Convicted by Juries, Exonerated by Science: Case Studies in the Use of DNA Evidence to Establish Innocence After Trial,* Attorney General Janet Reno directed NIJ to address the pitfalls in those investigations that have contributed to wrongful convictions. The most compelling evidence in the majority of those 28 cases was the eyewitness testimony presented at trial.

NIJ initiated this study in May 1998 with the primary purpose of recommending best practices and procedures for the criminal justice community to employ in its investigations involving eyewitnesses. Using its "Template for Technical Working Groups," NIJ established the Technical Working Group for Eyewitness Evidence [TWGEYEE] to identify, define, and assemble a set of investigative tasks that should be performed in every investigation involving eyewitness evidence to best ensure the accuracy and reliability of this evidence. The initial members of this group were the Planning Panel, a multidisciplinary group of nine professionals brought together to identify the needs of the criminal justice system in the area of eyewitness evidence, define goals and objectives for TWGEYEE, and develop the initial strategy for achieving TWGEYEE's mission.

Report at 3.

¶ 4 At section V of the Report, "Procedures for Eyewitness Identification of Suspects," there are a series of recommendations regarding line-up procedure, which provide as follows:

Prior to presenting a live line-up, the investigator should:

1. Instruct the witness that he/she will be asked to view a group of individuals.

2. Instruct the witness that it is just as important to clear innocent persons from suspicion as to identify guilty parties.

3. Instruct the witness that individuals present in the line-up may not appear exactly as they did on the date of the incident because features such as head and facial hair are subject to change.

4. Instruct the witness that regardless of whether an identification is made, the police will continue to investigate the incident.

5. Assure the witness that regardless of whether an identification is made,

the police will continue to investigate the incident.

6. Instruct the witness that the procedure requires the investigator to ask the witness to state, in his/her own words, how certain he/she is of any identification.

Report at 32.

¶ 5 In May 2001, prior to his preliminary hearing on charges of robbery and related offenses, appellant sought and was granted a pretrial line-up. *See Commonwealth v. Brown,* 544 Pa. 406, 676 A.2d 1178, 1182–83 (1996) (criminal defendant may request a pretrial line-up and decision is within the discretion of the court). Counsel for appellant, The Defender Association of Philadelphia, asked the Municipal Court to impose specific terms in connection with the line-up procedure. The proposed terms mirrored several of the recommendations contained in the Report. The Municipal Court granted counsel's request and entered an order granting a line-up with the following directives:

1. [The law enforcement official conducting the line-up must] instruct the witness(es) viewing the line-up, prior to the line-up and in the presence of defense counsel, as follows:

a. "Let me advise you that whether you make an identification or not, the Philadelphia Police Department will continue to investigate the incident," and

b. "Let me also advise you that after you view the line-up I shall ask you whether you can make an identification of any participant of the line-up as being a perpetrator in your case. If you do make an identification, I will ask how certain you are of that identification.

2. After the line-up is conducted, ask the witness, in the presence of defense counsel, how certain the witness is of any identification that was made. The response of the witness shall be recorded verbatim.

Philadelphia Municipal Court Order, 5/2/01.[1]

¶ 6 Asserting that the Municipal Court judge had no authority to issue the instructions that accompanied the order for the line-up, the Commonwealth appealed the order to the Court of Common Pleas. That court granted the Commonwealth the relief it sought and reversed the portion of the Municipal Court's order setting out specific instructions/questions that the law enforcement supervisor was required to recite to the witness.[2] Appellant filed an appeal of the Common Pleas Court's order and this court ordered appellant to show cause why the appeal should not be quashed as interlocutory. Appellant filed a response, as did the Commonwealth, which claimed that the appeal should be quashed. The matter is now before us.

---

**1.** The language of the Municipal Court's order was identical to that of a previous order by another Philadelphia Municipal Court judge in the case of *Commonwealth v. Whitfield.* Originally, *Whitfield* too was on appeal to this court and the Defender Association served as counsel. The *Whitfield* matter was consolidated with this case because the cases raised identical issues. The Defender Association filed a single brief on behalf of both defendants. However, after oral argument, we granted Whitfield's petition to discontinue his appeal. Only Montgomery remains as an appellant in this case.

**2.** The same court already granted the Commonwealth identical relief in the *Whitfield* matter. In response, Whitfield filed a Petition for Assumption of Extraordinary/Plenary Jurisdiction in the Pennsylvania Supreme Court, which was denied. The appeals by Whitfield and Montgomery to this court, and their consolidation, followed.

¶ 7 Appellant claims the order on appeal is properly before this court as a collateral order under the rules of appellate procedure. The Rules permit an appeal as of right where the order in question: 1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) is such that if review is postponed until final judgment, the claim will be irreparably lost. Pa.R.A.P. 313(a); (b). *See also Keefer v. Keefer*, 741 A.2d 808, 812 (Pa.Super.1999).

¶ 8 Even if we assume that this case involves a right that is separable from the main cause of action and one that is too important to be denied review, we cannot conclude that the third prong of the collateral order rule has been satisfied.

¶ 9 There are few instances in which a criminal defendant may pursue an appeal prior to final judgment, *i.e.*, conviction and sentence. Only in exceptional circumstances do we permit departure from "the basic rule limiting an appeal to the review of a final judgment." *Commonwealth v. Brady*, 510 Pa. 336, 508 A.2d 286, 288 (1986) (defendant may appeal from order denying dismissal on double jeopardy grounds only where claim is not frivolous). Thus, the third prong of the collateral order rule maintains the orderly flow of appeals from the trial courts by limiting them only to those in which relief would otherwise be "irreparably lost." *See Keefer, supra*, at 812 (in order to satisfy the collateral order rule, an "interest or issue must actually disappear due to the processes of trial").

¶ 10 In this case appellant retains his opportunity to present this issue to the appellate courts. If he is identified in the line-up and believes the line-up procedures were improper, he is entitled to file with the trial court a motion to suppress the identification. If he is unsuccessful on that motion, and ultimately is convicted, he may raise the issue on direct appeal. *See, e.g., Commonwealth v. Bruce*, 717 A.2d 1033 (Pa.Super.1998); *Commonwealth v. Scaine*, 337 Pa.Super. 72, 486 A.2d 486 (1984).

¶ 11 Appellant argues that unless the propriety of the Municipal Court's order is decided now, his claim will be irreparably lost because "one can never establish what would have happened had the line-up been conducted more fairly." Appellant's Brief at 7. We note however that appellant has never claimed that the line-up procedures currently in place were unfair, suggestive or in any manner violated his constitutional rights. Instead, appellant's counsel conceded that the line-up methods presently in operation satisfy the constitutional mandate and further admitted that what he was seeking was a line-up procedure that was "just a little more fair." Transcript, 5/17/01, at 33.[3]

¶ 12 In essence, what appellant is requesting here is a comprehensive change in the policy and procedure governing court-ordered line-ups. He has not asked for terms specific to his case, but rather has requested that the court adopt some of the recommendations in the NIJ Report.[4] The policy-based nature of appellant's request, and the fact that it therefore does not involve a right that will be irreparably

---

**3.** This statement by counsel was actually made in the Whitfield matter. However, it was made before the same judge who decided this case and in connection with the very same issue on appeal.

**4.** The Defender Association's decision to request these changes is not limited to appellant's case, as the initial consolidation of the *Whitfield* matter and the record in that case make clear.

lost, is best understood from a reading of the NIJ Report.

¶ 13 The Report explains that its recommendations are novel because "in the past, [state and local law enforcement agency] procedures have not integrated the growing body of psychological knowledge regarding eyewitness evidence with the practical demands of day-to-day law enforcement." Report at 1. The NIJ recommendations, however, are "supported by social science research":

> During the past 20 years, research psychologists have produced a substantial body of findings regarding eyewitness evidence. These findings offer the legal system a valuable body of empirical knowledge in the area of eyewitness evidence.

*Id.*

¶ 14 Appellant raises a provocative issue and makes compelling arguments in his favor. The relevant questions underlying this issue are: 1) whether a municipal or common pleas court judge has the authority to impose such changes; and 2) if he or she does have such power, whether the changes proposed in this case were proper. But the very nature of these issues precludes pretrial review under the collateral order doctrine. The fact that this case involves the modification of procedures already deemed to be proper under the law by the courts (and conceded to be proper under the law by counsel) establishes that the issue raised here simply does not constitute a "right that will be irreparably lost" if not addressed immediately.

¶ 15 Further, the proper forum for approving of such changes, should they be adopted, also is uncertain, militating in favor of awaiting final judgment in this case. Appellant argues that a municipal court judge has the inherent power to dictate the changes sought here. The Commonwealth offers alternative arguments in opposition. First, it claims that the courts cannot mandate the methods by which law enforcement personnel conduct line-ups and instead is limited to ruling on the admissibility of line-up identifications in a specific case.[5] Second, it insists that in the absence of a constitutional mandate, the changes cannot occur in the context of a particular case or controversy, but may be accomplished only by the Supreme Court under its rulemaking power. Yet another avenue of potential change is an act of the legislature.

¶ 16 In any event, regardless of what entity may act and under what authority, the question cannot be decided pretrial because it simply does not involve a right that will be lost if review is postponed.[6]

---

5. Appellant responds by drawing a distinction between police initiated investigative line-ups (not at issue here) and court-ordered line-ups requested by the defendant. In the latter, argues appellant, the police act at the behest of the court and so should be subject to its instructions.

6. In support of his claim that the order here satisfies the collateral order rule, appellant argues that the Commonwealth was permitted to appeal the Municipal Court order to the Common Pleas Court as a collateral order and, therefore, the collateral nature of the order has been established and cannot be questioned. Appellant further claims that the Commonwealth is estopped from arguing that the order on appeal is not a collateral one, due to its own prior appeal on that very basis.

The collateral order inquiry is necessarily dependent upon the party raising its application, as the questions asked relate directly to the party seeking an appeal. *See* Pa.R.A.P. 313(b). Here, the Commonwealth asserted that the Municipal Court's order was erroneous, without authority and detrimental to a fair proceeding. Because the Commonwealth cannot appeal an acquittal, its only opportunity to challenge the order came when the order was entered—before trial. If the Commonwealth had been unable to appeal the

¶ 17 Counsel for appellant commendably seeks to effectuate changes in the criminal justice system by requesting that line-up procedures be modified to reflect the NIJ's recent findings regarding eyewitness identification. However, those changes, if in fact they may be imposed by a court in a particular case, do not satisfy the strict requirements set out in the collateral order rule. Appellant must await a final judgment before seeking relief on this claim.

¶ 18 Appeal quashed. Matter remanded. Jurisdiction relinquished.

order at that time, its opportunity to do so would have been "irreparably lost." Appellant has no similar restriction. If he is unsuccessful at trial, he is entitled to file an appeal and seek relief in this court.

An order of the trial court that may be appealed by the Commonwealth is not automatically appealable by the defendant; rather, appealability at times depends upon the status of the party seeking relief and its opportunity for redress of an allegedly erroneous order. *See Commonwealth v. Rosario,* 419 Pa.Super. 481, 615 A.2d 740 (1992), *affirmed,* 538 Pa. 400, 648 A.2d 1172 (1994).