J-S34030-17

2017 PA Super 414

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRIAN THOMAS MAGEE, JR. | |
| | No. 3459 EDA 2016 |
| APPEAL OF: SCHINDLER LAW GROUP, LLC, THOMAS K. SCHINDLER, ESQUIRE, AND JOHN H. PAVLOFF, ESQUIRE | |

Appeal from the Order Dated October 19, 2016
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003719-2015
CP-15-CR-0003720-2015
CP-15-CR-0003721-2015

BEFORE: BOWES, J., SOLANO, J., and PLATT, J.[*]

OPINION BY SOLANO, J.:                    **FILED DECEMBER 27, 2017**

Appellants Schindler Law Group, LLC, Thomas K. Schindler, Esquire, and John H. Pavloff, Esquire (collectively, "Schindler") appeal from the order denying Schindler's motion to withdraw as criminal defense counsel for Brian Thomas Magee, Jr. We affirm.

Magee was arrested and imprisoned in September 2015 for defrauding three customers by accepting deposits for home improvements and then

_____

[*] Retired Senior Judge assigned to the Superior Court.

failing to perform the work.[1]  The three cases were consolidated for trial. Magee remained in custody because he was unable to post bail.

Magee retained Schindler in October 2015.  According to Schindler, its engagement letter stated that Schindler would represent Magee for a flat fee that did not include representation at trial, and that a separate engagement letter and an additional fee would be required for trial representation. Schindler's Brief at 12.[2]

On March 15, 2016, Schindler moved for a temporary modification of Magee's bail.  Magee's defense was that his failure to complete the work at the three victims' homes was a breach of his contractual obligations, but not a criminal offense.  Schindler claimed it could not prepare that defense without Magee's help in gathering documents and other materials that were voluminous and had to be assembled and reviewed prior to trial.  On May 4, 2016, the trial court modified Magee's bail to allow his release to assist Schindler with trial preparation.

After several continuances, Magee's trial was scheduled for October 31, 2016.  The trial court summarized:

---

[1] More specifically, he was charged with home improvement fraud, 73 P.S. § 517.8(a)(1) & (2), and theft by deception, 18 Pa. C.S. § 3922(a)(1).

[2] The engagement letter is not in the certified record or the reproduced record, and although Schindler purports to quote the letter in its brief, we may not consider it in that form.  *See Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (failure to ensure that document is in certified record "cannot be remedied merely by including copies of the missing documents in a brief"), *appeal denied*, 916 A.2d 632 (Pa. 2007); Pa.R.A.P. 1921 Note (documents must be included in the certified record or, in appropriate cases, the reproduced record).

[Magee]'s cases were first listed for trial in December 2015 and subsequently continued by [Schindler] seven times. Each time a Motion for Continuance was submitted, the reason given by [Schindler] was that more time was needed for review of [Magee]'s documents in preparation for trial. The last continuance request and Order dated August 12, 2016 states, "additional time needed for trial preparation; date certain for commencement of trial: Tuesday, September 20, 2016; counsel attached for trial beginning on that date[.]" The attorney for the Commonwealth realized within a day or two of that Continuance Order that [he] was unavailable in September, so **the parties agreed** to a special listing for trial and attachment of counsel. That notice of attachment for a four day trial commencing October 31, 2016 was sent to [Schindler] by Court Administration on August 17, 2016.

Trial Ct. Op., 11/16/16, at 2 (emphasis in original).

On October 14, 2016, two weeks before Magee's trial was scheduled to begin, Schindler filed a motion to withdraw as Magee's counsel. In that motion, Schindler represented that most, but not all, of the fixed fee under its letter agreement with Magee had been paid; it had offered to perform additional services for Magee, including trial representation, in exchange for an additional fee; and Magee had replied that he was unable to pay an additional fee. Mot. to Withdraw at ¶¶ 6, 10, 11. Schindler also averred that it had "given reasonable warning" to Magee that if it did not receive an additional fee, it would withdraw as counsel. *Id.* at ¶ 13.

On October 18, 2016, the trial court held a hearing on Schindler's motion to withdraw. Magee arrived late for the hearing.[3] Before Magee

_____

[3] The hearing had originally been scheduled for November 7, 2016; it was rescheduled on October 17, 2016. Schindler informed Magee of the change,
*(Footnote Continued Next Page)*

- 3 -

arrived, Attorney Pavloff told the court that he had given Magee a copy of the motion to withdraw but did not know Magee's position on it. N.T., 10/18/16, at 2. Pavloff further represented that Magee had paid "almost all" of the fixed fee under the agreement, but had not paid for trial. *Id.* at 3. When the court reminded Pavloff that Magee's case was "specially listed long ago," Pavloff responded that, although "we have known for some time it's a trial," he expected either that Schindler would be paid an additional fee for trial or that the case would be resolved through a plea agreement. *Id.*

When Magee arrived, Pavloff asked Magee if he opposed Schindler's motion, and Magee responded, "No, not at all." N.T., 10/18/16, at 9. Magee said that, starting the previous week, he had begun consultations with three other attorneys. *Id.* When the court asked how he could pay another attorney when he could not afford to pay Schindler, Magee responded, "Have to go to work." *Id.* at 10. The trial court expressed concern that Magee would not be able to pay any attorney and would be ineligible for a public defender because he was working. *Id.*

The Commonwealth opposed the motion to withdraw because it would delay the trial. The Commonwealth pointed out that it had already subpoenaed twelve witnesses and would be ready for trial on the scheduled October 31, 2016 trial date. N.T., 10/18/16, at 5. The Commonwealth was

_____
*(Footnote Continued)*
and he indicated that he would "do[] his best to get [there]." N.T., 10/18/16, at 2.

not optimistic about a possible plea bargain. *Id.* At the end of the hearing, the trial court took the matter under advisement.

The next day, October 19, 2016, the trial court issued an order denying Schindler's motion to withdraw. In a footnote, the trial court explained its reasoning, emphasizing the following facts:

> 1. [Schindler] stated to the court and averred in [its] Motion that [it] has been mostly compensated for [its] work to date. We note [Schindler] did not aver the sum owed, the sum paid, or the work that has not been compensated.[4]
>
> 2. [Schindler] seeks to withdraw two weeks prior to the commencement of a specially scheduled, discovery intensive jury trial set to commence on October 31, 2016. We note that the special date was issued to the parties on August 17, 2016.
>
> 3. [Schindler] does not state in [its] Motion how notice was given or when [it] gave notice to [its] client about [its] desire to withdraw and therefore, we cannot assess whether sufficient notice was given to [Magee]. Counsel did indicate that he was unaware of his client's position on the Motion and therefore we can assume that he had not had any discussions with his client on the topic.

Order, 10/19/16, at 2-3. The court concluded that Schindler "waited until the last minute to make the court aware of [its] issues with [its] client," and "failed to take steps to avoid the foreseeable prejudice of delaying trial, and

---

4 In its brief to this Court, Schindler states that when it filed its motion to withdraw, Magee had paid it $3,225 and owed $1,150, and that the cost of trial would be approximately $8,000 to $10,000, without costs and expenses. Schindler's Brief at 13, 16. These figures were not provided to the trial court, and we therefore will not consider them in determining whether the trial court erred. *See Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007) (appellate court will not consider assertions that appear only in briefs).

delaying the ability of [its] client to employ other counsel prior to the jury trial date of October 31, 2016." *Id.* at 3.

On October 27, 2016, Schindler filed a notice of appeal. By an order entered December 13, 2016, this Court directed Schindler to show cause why the appeal should not be quashed as interlocutory. Schindler filed a response in which it contended that the trial court's order denying the motion to withdraw was a collateral order appealable under Pa.R.A.P. 313. On January 6, 2017, this Court discharged the show-cause order and deferred resolution of the appealability issue to this panel.

On February 6, 2017, Schindler filed its brief, in which it includes the collateral order issue as the first of three questions presented:

> Does the Superior Court have jurisdiction to review the current matter as an appeal as of right from a collateral order pursuant to Pa.R.A.P. 313?
>
> Did the lower court commit an error of law and/or an abuse of discretion when it failed to grant an unopposed Motion for Leave to Withdraw as Counsel prior to trial where the undisputed testimony indicated that the client agreed and understood that: he had engaged Counsel only to represent him up to — but excluding trial, he had not paid Counsel in full under that original engagement, had not retained Counsel for representation at trial, and did not oppose Counsel's withdrawal?
>
> Did the lower court commit an error of law and/or an abuse of discretion when it denied Counsel's Motion to Withdraw in a criminal matter on the basis of erroneous conclusions and inferences drawn from "omissions" in the factual record and its own conclusion, unsupported by the testimony presented, that the client was not given "reasonable warning" about Counsel's intention to withdraw prior to the commencement of trial?

Schindler's Brief at 10-11.

- 6 -

**Jurisdiction**

Schindler contends that the trial court's order denying its motion to withdraw is a collateral order appealable under Rule 313(b). The Commonwealth agrees. **See** Commonwealth's Brief at 7-8.[5] "Whether an order is appealable under Pa.R.A.P. 313 is a question of law. As such, our standard of review is *de novo* and our scope of review is plenary." **Rae v. Pa. Funeral Dir. Ass'n**, 977 A.2d 1121, 1126 n.8 (Pa. 2009).

The Supreme Court of Pennsylvania has explained:

Otherwise known as the collateral order doctrine, [Appellate] Rule 313(b) provides that an interlocutory order is collateral and, therefore, immediately appealable, if it is: "[1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."

**K.C. v. L.A.**, 128 A.3d 774, 777 (Pa. 2015) (quoting Pa.R.A.P. 313(b)). "With regard to the first prong of the collateral order doctrine, an order is separable from the main cause of action if it is entirely distinct from the underlying issue in the case and if it can be resolved without an analysis of the merits of the underlying dispute." **Id.** at 778 (quotation marks and citation omitted). With regard to the second prong, "a right is important if the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule. Notably, the rights involved . . . must be deeply rooted in public policy going

---

[5] The trial court's opinion does not address this issue.

- 7 -

beyond the particular litigation at hand." *Id.* at 779 (quotation marks and citations omitted). With regard to the third prong, a right sought to be asserted on appeal will be "irreparably lost" if, as a practical matter, forcing the putative appellant to wait until final judgment before obtaining appellate review will deprive the appellant of a meaningful remedy. *See Commonwealth v. Harris*, 32 A.3d 243, 248-51 (Pa. 2011).

Neither party has cited, nor have we found, controlling authority addressing whether the denial of a petition to withdraw as counsel, based on a client's inability to pay, is a collateral order under Rule 313. However, in *Brown v. Pennsylvania R.R.*, 255 A.2d 554 (Pa. 1969), the Supreme Court of Pennsylvania held that an order dismissing an attorney's petition to withdraw was immediately appealable. 255 A.2d at 555 n.1. In *Brown*, an attorney hired by an insurance company to represent its insured sought to withdraw after the insurance company concluded that the claim was not covered under the insured's policy. *Id.* at 555. The Court explained why the denial of counsel's motion to withdraw was appealable:

> Even though the often-used rationale for appealability that appellant has been put "out-of-court" is particularly inapt in the instant situation where appellant has actually been forced into court, it is apparent that as to him, the order is an absolute denial of the relief sought, and could never be raised at any other time if it were not appealable now.

*Id.* at 555 n.1.

*Brown* was decided before the Supreme Court of Pennsylvania adopted the collateral order doctrine[6] and before the extensive revision in 1992 of the definition of a final order under Appellate Rule 341. Before 1992, an order was deemed an appealable final order if some part of it had some aspect of finality or put a party "out of court" on an issue. *See* G.R. Darlington, *et al.*, 20 Pa. Appellate Practice § 341:1 (West's Pa. Prac. Ser. 2016). The *Brown* decision was a product of that pre-1992 framework, and the order in *Brown* would not be appealable under the current version of Rule 341. In the years between *Brown* and the 1992 revisions, this Court upheld appealability in two appeals from orders denying attorneys' petitions to withdraw based on nonpayment. *See Commonwealth v. Scheps*, 523 A.2d 363 (Pa. Super.) (plurality opinion[7]), *appeal denied*, 533 A.2d 91 (Pa. 1987); *Commonwealth v. Sweeney*, 533 A.2d 473, 474 n.1 (Pa. Super. 1987) (relying on *Scheps* and lack of challenge to appealability, and considering order denying attorney's petition to withdraw to be a final

---

[6] The Court adopted the collateral order doctrine in *Bell v. Beneficial Consumer Discount Co.*, 348 A.2d 734, 735 (Pa. 1975), and *Pugar v. Greco*, 394 A.2d 542, 545 (Pa. 1978). The Court promulgated Rule 313, "a codification of existing case law with respect to collateral orders," in 1992. Pa.R.A.P. 313 Note.

[7] Although there was no majority opinion in *Scheps*, all members of the panel agreed that the appeal was properly before the court. *See Scheps*, 523 A.2d at 371 (Olszewski, J., dissenting) (noting that appeal was properly before the court as a final order under *Brown*). As a plurality opinion, *Scheps* is not binding precedent in this Court. *See MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1223 (Pa. Super. 2015), *appeal denied*, 161 A.3d 789 (Pa. 2016).

determination). We have not returned to the issue since adoption of the collateral order rule, however.

In **Commonwealth v. Wells**, 719 A.2d 729, 730 (Pa. 1998), the Supreme Court of Pennsylvania held that an order denying a request to withdraw as counsel based on an alleged conflict of interest was not appealable under Appellate Rule 313. The attorney filed a petition to withdraw, and the client (a criminal defendant who claimed that the attorney had a conflict of interest) appealed the denial of that petition. **Id.** The Court held that the order did not satisfy the third requirement of the collateral order rule:

> Appellant's claim that he is entitled to "conflict-free" PCRA counsel will not be irreparably lost if the order denying the Petition to Withdraw is not reviewed at this time. Since Appellant has a right of appeal if the PCRA court denies his petition, the order denying the Petition to Withdraw, and consequently the merits of the conflict issue, can be reviewed if or when Appellant files an appeal from the court's PCRA decision.

**Id.** at 731. Notably, the appeal in **Wells** was filed by the client (whose appellate rights would remain once a final judgment was entered), and not by the lawyer seeking to withdraw. In that connection, we have explained that "[t]he collateral order inquiry is necessarily dependent upon the party raising its application, as the questions asked relate directly to the party seeking an appeal." **Commonwealth v. Montgomery**, 799 A.2d 149, 154 n.6 (Pa. Super. 2002). Thus, "appealability at times depends upon the status of the party seeking relief and its opportunity for redress of an allegedly erroneous order." **Id.**

In **Commonwealth v. Reading Group Two Properties, Inc.**, 922 A.2d 1029 (Pa. Cmwlth. 2007), the Commonwealth Court held that the denial of an attorney's petition to withdraw, based on his client's failure to pay fees, was a collateral order under Appellate Rule 313. **Id.** at 1033. The court distinguished **Wells**:

> Unlike **Wells**[,] where a new hearing could be granted along with new counsel, the present controversy involves a matter where the rights of counsel would be lost if the matter proceeded any further.
>
> Once a final judgment is reached in the underlying action, the right of counsel to withdraw will become moot.

**Id.**

This case is similar to **Reading Group**, and although the Commonwealth Court's decision is not precedential in this Court,[8] we reach the same result here. Schindler sought to withdraw based on Magee's inability to pay for its work during a trial. The order denying Schindler's motion to withdraw presents issues "separable from and collateral to the main cause of action" because they are "entirely distinct from the underlying issue" in Magee's case and "can be resolved without an analysis of the merits of the underlying" criminal matter. **See K.C.**, 128 A.3d at 778. Moreover, an order requiring an attorney to represent a client without compensation involves important rights — for the client, the right to counsel, and for the attorney, the right to earn a livelihood. **See Reading Group**,

---

[8] **See**, **e.g.**, **Petow v. Warehime**, 996 A.2d 1083, 1089 n.1 (Pa. Super.), **appeal denied**, 12 A.3d 371 (Pa. 2010).

922 A.2d at 1033 (implicitly finding that second collateral order requirement had been met). Finally, the rights of Schindler will be lost if it cannot appeal immediately; once a trial has taken place, Schindler's motion to withdraw will have become moot. **See Brown**, 255 A.2d at 555 n.1; **Reading Group**, 922 A.2d at 1033.

For the foregoing reasons, we agree with the parties that the order appealed from is an appealable collateral order. We therefore have jurisdiction over this appeal.[9]

---

[9] We are aware that this result does not come without costs. Under Appellate Rule 1701, a trial court normally loses jurisdiction once an appeal is filed. Although Rule 1701(c) permits the trial court to continue to act on those parts of a case that are separate from the issue on which a collateral-order appeal is taken, an order regarding who may be counsel in a case is not likely to be so unrelated to the remaining parts of the case as to permit the rest of the trial court proceedings to move forward. **See generally Commonwealth v. McClure**, 172 A.3d 668, 698-99 (Pa. Super. 2017); **Commonwealth v. Hall**, 476 A.2d 7, 10 (Pa. Super. 1984). Permitting an immediate appeal from an order denying criminal defense counsel's request for withdrawal therefore risks stopping a criminal proceeding in its tracks — as apparently has occurred here — and bestowing on defendants a powerful tool for delay. But we have no cause to assume that counsel will make withdrawal motions in bad faith, and we trust that in those cases where questions along such lines arise, the trial court will inform us of relevant concerns. The rules always permit a party to seek appellate expedition or other appropriate relief.

## Petition to Withdraw

Turning to the merits of this appeal, we review a trial court's denial of counsel's petition to withdraw under the abuse of discretion standard. ***C.E. Williams Co. v. Henry B. Pancoast Co.***, 194 A.2d 189, 191 (Pa. 1963); ***Sweeney***, 533 A.2d at 474.

Schindler contends that the trial court's denial of its motion to withdraw was an abuse of discretion or an error of law because (1) Magee did not oppose the motion and "had three other attorneys lined up for possible representation at trial"; (2) its engagement by Magee was limited to pretrial matters and specifically excluded trial and post-trial representation; (3) Magee had failed to fulfill his financial obligations under the letter agreement and told Schindler that he would not be able to fulfill them going forward; and (4) Schindler "continually notified Magee of his failure to meet [his] financial obligations and of Counsel's intent to withdraw if the case went to trial without Magee retaining and paying Counsel for trial services." Schindler's Brief at 23-24. Schindler also argues that its withdrawal would result in only "a slight delay in the matter being called to trial" and would not cause prejudice to Magee. ***Id.*** at 24.

The Commonwealth argues that the trial court acted within its discretion in denying the petition to withdraw and emphasizes that (1) Schindler made no attempt to withdraw until two weeks before trial, even though a notice of attachment for a four-day trial was sent two months earlier; (2) Schindler sought and was granted numerous continuances to

- 13 -

allow more time to prepare a defense and review documents; and (3) the Commonwealth had already subpoenaed numerous witnesses when Schindler filed its petition to withdraw. The Commonwealth asserts that "[h]aving to wait for [Magee] to find new counsel, and for that counsel to prepare for trial, would significantly burden the Commonwealth, and unduly delay trial[, e]specially in light of counsel's indication of the amount of preparation and discovery required." Commonwealth's Brief at 14. The Commonwealth also contends that the hearing transcript demonstrates that Mr. Pavloff "was not clear about what type, if any, [of] notice he provided to his client about his withdrawal." *Id.* at 16.

The trial court denied Schindler's motion based on its finding that Schindler did not act "to minimize the inconvenience to the client due to [its] withdrawal." Trial Ct. Op. at 5 (quoting ***Commonwealth v. Roman***, ***Appeal of Zaiser***, 549 A.2d 1320, 1332 (Pa. Super. 1988)). Rather, Schindler "created [its] own emergency." *Id.* The court elaborated:

> While the court feels very strongly that lawyers are entitled to be compensated for their work, in this case, [Schindler] waited until the last minute to make the court aware of [its] issues with [its] client. Given that [Magee] has made payments to [Schindler], there is no reason to believe [Magee] will not pay [Schindler] in the future after [Magee] goes back to work. [Schindler] failed to take steps to avoid the foreseeable prejudice of delaying trial, and delaying the ability of [its] client to employ other counsel prior to the jury trial date of October 31, 2016. There was sufficient time for [Schindler] to take the necessary steps when notice of counsel's attachment for trial was given on August 17, 2016, a date agreed to after extensive discussion between the parties and the court, over the course of months, as to the need for a special listing of this four day trial because of the number of witnesses involved and the complexity of the case.

*Id.* at 5-6.

The Rules of Criminal Procedure provide that an attorney for a defendant may not withdraw without leave of court. Pa.R.Crim.P. 120(B)(1).[10] A comment to the rule explains:

> The court must make a determination of the status of a case before permitting counsel to withdraw. Although there are many factors considered by the court in determining whether there is good cause to permit the withdrawal of counsel, when granting leave, the court should determine whether new counsel will be stepping in or the defendant is proceeding without counsel, and that the change in attorneys will not delay the proceedings or prejudice the defendant, particularly concerning time limits. In addition, case law suggests other factors the court should consider, such as whether (1) the defendant has failed to meet his or her financial obligations to pay for the attorney's services and (2) there is a written contractual agreement between counsel and the defendant terminating representation at a specified stage in the proceedings such as sentencing. . . .

Pa.R.Crim.P. 120, Cmt. This Court has said:

> No brightline rules exist to determine whether a trial court has abused its discretion in denying a Petition to Withdraw as counsel. A balancing test must be utilized to weigh the interests of the client in a fair adjudication and the Commonwealth in the efficient administration of justice. Thus, a resolution of the problem turns upon a case by case analysis with particular attention to the reasons given by the trial court at the time the request for withdrawal is denied.

*Sweeney*, 533 A.2d at 481 (footnote omitted). The balancing test includes consideration of "the interests of the attorney seeking withdrawal, i.e.,

---

[10] Rule 120(A)(4) states, "An attorney who has been retained or appointed by the court shall continue such representation through direct appeal or until granted leave to withdraw by the court pursuant to paragraph (B)." Rule 120(B)(1) then states, "Counsel for a defendant may not withdraw his or her appearance except by leave of court."

factors including, but not limited to, the amount of time, money and energy already expended on the case and whether counsel's withdrawal would prejudice the client so as to amount to a 'desertion' of the latter's cause." *Id.* at 481 n.10.

In several cases, we have reversed the denial of an attorney's motion to withdraw based on nonpayment of fees. For example, in **Scheps**, although there was no majority opinion explaining the court's rationale, two of the three judges on the panel agreed that the trial court erred in denying an attorney's motion to withdraw. **See Scheps**, 523 A.2d at 370 (Cercone, J.), 371 (Wieand, J., concurring and dissenting). The attorney in **Scheps** sought to withdraw after "it became apparent that Mr. Scheps would be unable to pay [the lawyer] his present unpaid fees, which amounted to $6,000 above the original retainer[,] and would be unable to pay fees for future services[,] which were estimated to be in the area of $150,000, in trying a case that would last 2-3 months . . . ." *Id.* at 365 (Cercone, J.). The lawyer notified Scheps of his intention to withdraw one month before filing his petition. *Id.* At the time of the withdrawal hearing, the case was not ready for trial. *Id.* at 370. At the hearing, Scheps said he did not wish to continue with his attorney because he could not "in good conscience" ask his lawyer to continue to represent him when he could not pay. *Id.* at 369, 372.

In the lead opinion in **Scheps**, Judge Cercone concluded that the attorney's withdrawal was mandatory under the Disciplinary Rules because

Scheps had discharged him, and the trial court had no discretion to deny the motion. *Scheps*, 523 A.2d at 366-67.[11] Judge Cercone also stated, "Permitting counsel's withdrawal when he has good grounds to do so together with his client's permission to do so and in the absence of any real prejudice to the client or to the Commonwealth is entirely justifiable." *Id.* at 368. Judge Cercone noted that the lawyer in *Scheps* had not previously delayed the judicial process or filed the petition to withdraw in bad faith. *Id.* at 370. In a concurring and dissenting opinion, Judge Wieand said he disagreed with Judge Cercone's conclusion that the trial court lacked discretion to deny the petition, but would have held that, under the peculiar circumstances of the case, the trial court abused its discretion. *Id.* at 371 (Wieand, J., concurring and dissenting).

In *Sweeney*, this Court held that the trial court abused its discretion in denying an attorney's petition to withdraw. *See* 533 A.2d at 474. Sweeney hired the attorney only for the pretrial and trial stages of his case, and could not afford to pay the attorney to represent him on appeal. *Id.* The attorney helped Sweeney file a notice of appeal, and then filed a motion to withdraw. *Id.* at 475. The trial court denied that motion based on: its

---

[11] Judge Cercone relied on Rule 2-110 of the Pennsylvania Code of Professional Responsibility. The Code of Professional Responsibility has been replaced by the Rules of Professional Conduct, which also contain a provision requiring that a lawyer withdraw when discharged by a client. *See* Pa. R. Prof'l Conduct 1.16(a)(3). The Rules also state that a lawyer *may* withdraw if "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled[.]" *Id.* 1.16(b)(5).

belief that Sweeney needed an "expert criminal lawyer" for his appeal; its concern about the delay involved if a new attorney were appointed; its reluctance to provide county funds for Sweeney's representation; and its belief that by entering a general appearance, Sweeney's lawyer had committed to representing Sweeney through the appellate stage. *Id.* at 476-77. This Court held that those reasons did not support the court's decision:

> We agree that desertion of a client is abhorrent to the spirit of the legal profession. It may also form the basis of a later collateral claim of ineffectiveness. We also consider the trial court's regard for the post-sentence rights of appellant laudable. Unfortunately, however, in the midst of its concern for Sweeney's right to competent appellate counsel, the cost of transcripts and records to the taxpayers of Crawford County and the length of time elapsing before any new counsel could familiarize himself with the case, the trial court . . . overlooked the one crucial factor which goes to the heart of the instant appeal and upon which appellant premised his plea to withdraw from further representation. That is, the trial court failed to consider the economics of appellant's continued representation.
>
> The trial court insisted that appellant continue to represent Sweeney on appeal without appointment or further compensation. The trial court's predicate for this flows from its belief that because "Mr. Ambrose [appellant herein] received a substantial fee . . . the interests of justice require that Mr. Ambrose continue through the appellate stage." This conclusion, however, finds no support in the record.

*Id.* at 477 (citation omitted).

We also held that the trial court abused its discretion in denying an attorney's petition to withdraw in *Roman*, 549 A.2d at 1321. The client in *Roman* owed over $12,000 for services rendered, and had entered into a written fee agreement providing that if he failed to pay his lawyer's fees, his

lawyer could withdraw. *Id*. at 1322. Relying on *Scheps* and *Sweeney*, we held that the client's violation of the fee agreement was a sufficient reason for the lawyer to withdraw. *Id.* We added, "[i]t also would be reasonable to hold that the client knowingly and freely assented to the termination of [his attorney's] employment," based on the language of the fee agreement and the lawyer's assertion, in his petition to withdraw, that the client consented. *Id.* Finally, we noted that the lawyer "minimized any prejudice which might occur to the client." *Id.* The lawyer had provided "competent and conscientious" representation, without compensation, and waited until he filed an appeal before seeking to withdraw. *Id.* at 1323. The lawyer also informed his client of his intention to withdraw more than one month prior to filing the petition. *Id.*

By contrast, in *Commonwealth v. Ford*, 715 A.2d 1141 (Pa. Super. 1998), this Court held that a trial court abused its discretion by *granting* an attorney's motion to withdraw. *Id.* at 1145. In *Ford*, the attorney's motion was based on his client's lack of cooperation and failure to pay him in full. *Id.* However, it appeared that the client was not served with the motion,[12] and the motion was filed just three days before trial. *Id.* After the trial court granted the motion, the client was tried in absentia and without counsel, and was convicted. *Id.* at 1143. The client appealed, and we held that the trial court abused its discretion in granting the attorney's motion to

---

[12] The client was a fugitive when the attorney filed his motion.

withdraw. ***Id.*** at 1145. We stressed the importance of mitigating prejudice and said, "the interests of the attorney are but one factor, and in the instant case it is simply not enough to justify withdrawal." ***Id.*** at 1145-46.

After careful consideration, we conclude that the trial court did not abuse its discretion in denying Schindler's motion to withdraw after weighing the interests of all parties. Like the trial court, we are sympathetic to Schindler's financial concerns; however, "the interests of the attorney are but one factor" to consider in assessing a motion to withdraw. ***See Ford***, 715 A.2d at 1145-46. Criminal Rule 120(B) makes clear that a trial court has discretion to deny a request by counsel for withdrawal, and there is no strict rule that counsel must always be permitted to withdraw in cases where counsel has not been paid. The trial court was free in this case to conclude that other factors outweighed the financial burden on counsel when it denied Schindler's motion.

We agree with the trial court that this case is distinguishable from ***Scheps***, ***Sweeney***, and ***Roman*** because Schindler did not take steps to minimize the prejudice to Magee. ***See*** Trial Ct. Op. at 5. Although Magee said he did not oppose Schindler's motion, he was placed in the position of searching for new counsel just a week before Schindler's motion was heard. At the time of the hearing, just two weeks before the scheduled start of trial,

Magee had not retained replacement counsel and was unable to state how he planned to pay for new counsel.[13]

Moreover, it was appropriate for the trial court to consider the interests of the Commonwealth in the "efficient administration of justice." *Sweeney*, 533 A.2d at 481. Before moving to withdraw, Schindler requested and received seven continuances, based on its representations that "more time was needed for review of [Magee's] documents in preparation for trial." Trial Ct. Op. at 2. Schindler emphasized that it needed that time because the documents were voluminous. If this voluminous record justified so much delay by Schindler for trial preparation, it was reasonable for the trial court to assume that any replacement counsel also would require significant time to get up to speed. *Cf. Scheps*, 523 A.2d at 370 (Cercone, J., noting that the attorney had not previously delayed the judicial process).

---

[13] In its Statement of Questions Presented, Schindler suggests that the trial court made "erroneous conclusions and inferences drawn from 'omissions' in the factual record and its own conclusion, unsupported by the testimony presented, that [Magee] was not given 'reasonable warning' about Counsel's intention to withdraw prior to the commencement of trial[.]" Schindler's Brief at 10-11. As we previously stated, we are limited to considering only the evidence presented to the trial court; we may not consider additional assertions that appear only in Schindler's brief regarding discussions with Magee. *See Wrecks*, 931 A.2d at 722. It is the appellant's responsibility to ensure that the certified record contains the facts needed for review. *Id.* Based on the facts before it, including Pavloff's representation that, as of the hearing on his motion to withdraw, he did not know Magee's position on the motion, we conclude that the trial court made the reasonable inference that counsel had not given Magee sufficient notice of its intent to withdraw just two weeks before the trial was scheduled to begin.

Here, unlike in **Roman**, **Sweeney**, and **Scheps**, Schindler "failed to take steps to avoid the foreseeable prejudice of delaying the trial." Rather, Schindler waited until just two weeks before the scheduled start of trial — at a time when the Commonwealth was ready to proceed as scheduled — to notify the court and the Commonwealth of its concerns regarding nonpayment. Trial Ct. Op. at 5. In the cases in which we have held that withdrawal should have been permitted, the trial court was not placed in such a last-minute situation. **See Roman**, 549 A.2d at 1323 (counsel provided representation through trial, without compensation, before seeking to withdraw); **Sweeney**, 533 A.2d at 474 (counsel moved to withdraw after trial and after assisting client with notice of appeal); **Scheps**, 523 A.2d at 370 (case was not ready for trial when attorney filed his petition to withdraw).

On these facts, the trial court was not required to deny Schindler's request to withdraw, but it also was not required to grant it. Having discerned no abuse of the trial court's discretion, we affirm the trial court's order denying the motion to withdraw.

Order affirmed.

Judge Bowes joins the opinion.

Judge Platt files a concurring and dissenting opinion.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 12/27/2017*